GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
BRANDON GREENE (SBN 293783)
bgreene@aclunc.org
WILLIAM S. FREEMAN (SNB 82002)
wfreeman@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6380
Facsimile: (415) 255-8437

THOMAS ZITO (CA BAR NO. 304629)
tzito@dralegal.org
SEAN BETOULIERE (CA BAR NO. 308645)
sbetouliere@dralegal.org
SHIRA TEVAH (CA BAR NO.307106)
stevah@dralegal.org
DISABILITY RIGHTS ADVOCATES
2001 Center Street, 4th Floor
Berkeley, California 94704-1204
Tel:      (510) 665-8644
Fax:      (510) 665-8511

SHIRLEY GIBSON (CA BAR NO. 206829)
sgibson@legalaidsmc.org
ASHLEY LUO (CA BAR NO. 334260)
aluo@legalaidsmc.org
LEGAL AID SOCIETY OF SAN MATEO
COUNTY
Sobrato Center for Nonprofits, 330
Twin Dolphin Dr Ste 123,
Redwood City, CA 94065
Tel: (650) 558-0915
Fax: (650) 517-8973

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SEAN GEARY, LINDA MILES, JARED CARR, HARRY BODE, STEPHEN SANDERS, and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PACIFICA<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

**INTRODUCTION**

1.      As the COVID-19 pandemic rages, intensifying an already severe housing crisis in the notoriously expensive San Francisco Bay Area, the scenic coastal city of Pacifica (the "City") seeks to banish from public view those of its residents who, because they are struggling financially, have no choice but to live in their vehicles. The City sees these residents not as valuable constituents, but as human blight antithetical to its aesthetic. So, it passed two ordinances: one which criminalizes "human habitation" in vehicles, and one which criminalizes parking "oversized vehicles," and specifically recreational vehicles ("RVs"), in the City. These ordinances punish individuals for nothing more than being poor and unable to afford fixed housing, adding additional devastating consequences to the lives of those who are already struggling.

2.      The City's use of municipal ordinances to banish indigent and vehicularly housed individuals is cruel and unconstitutional. It has wreaked havoc on the lives of Plaintiffs Sean Geary, Linda Miles, Jared Carr, Harry Bode, and Stephen Sanders ("Plaintiffs"). Each of these Plaintiffs has longstanding roots in Pacifica, but now face financial ruin, loss of all possessions and home, and even criminal penalties if they stay in, or even visit, the City they love—all because the City has written them off as "blight."

3.      Like many people priced out of fixed housing but hoping to maintain shelter, dignity, privacy, and safety, Plaintiffs have turned to RVs for refuge. For Plaintiffs, these RVs are necessary for survival, as without them they would be forced to sleep on the street. These RVs are not only home and security, but they also typically serve as Plaintiffs' sole means of transportation. In some cases, an RV serves as the only way to visit loved family members in Pacifica; in other cases, an RV is the only means to reside in Pacifica so as to maintain employment there. Nevertheless, the City has banned RVs from its streets, and seeks to prohibit RV dwellers from residing in the City. This is because RVs and those who live in them are an inconvenient and uncomfortable reminder of the economic inequality and poverty that affects an increasing number of Pacificans.

CLASS ACTION COMPLAINT

2

4.      The City's disdain for its vehicularly housed residents and its desire to hide them from public view is not new, but it has recently worsened. For decades the City has maintained a law that criminalizes the very act of sleeping or being in a vehicle overnight. Specifically, in 1987 the City passed Ordinance 480-C.S. (the "Human Habitation Ordinance"), which established Pacifica Municipal Code Title 4, Chapter 7, Article 11 § 4-7.1114 (hereinafter the "Human Habitation Ban"). This ordinance made it unlawful for any person to "use, occupy, or permit the use or occupancy of any automobile, truck, camper, house car, mobile home, recreational vehicle, trailer, trailer coach, or similar conveyance for human habitation on any public property, including any park, beach, square, avenue, alley, or other public way, within the City between the hours of 10:00 p.m. and 6:00 a.m., except where such use occurs lawfully in areas officially designated for such purposes by the City." A person who violates this code section is deemed guilty of an infraction, which is punishable for a first conviction by a fine of not more than $100, for a second conviction by a fine of not more than $200, and for a third or any subsequent conviction by a fine of not more than $500. Even more troubling, a fourth conviction for violating the Human Habitation Ordinance is a criminal misdemeanor. The vague language in the Human Habitation Ordinance makes it difficult to decipher what conduct is prohibited—but makes plain the City's intent to criminalize those housed in vehicles, even when vehicular housing is their only option.

5.      While the City has sought to enforce the Human Habitation Ban to expel its vehicularly housed population, the language of the code makes it difficult to do so. Thus, the City sought a more enforceable means to achieve its goal. It did this by targeting people housed in RVs and crafting a pretextual "traffic safety" rationale. In late 2019, under the false guise of traffic safety, the City passed Ordinance No. 855-C.S. (the "OSV Ordinance") that, amongst other things, modified Pacifica Municipal Code Title 4, Chapter 7, Article 12 § 4-7.1204 and established Pacifica Municipal Code Title 4, Chapter 7, Article 12 § 4-7.1205 (collectively the "OSV Ban"). Under the OSV Ordinance it became unlawful to "park or leave standing" an RV on any road less than 40 feet wide, other streets that "have width constraints which cause the street to be unsafe for traffic," or where RV parking would "interfere with aesthetics or ocean

views" as determined by either the City Council or the City's Traffic Engineer. The OSV Ordinance allowed temporary permits for RV parking, but only for people who maintained a fixed residence in the City, not those who rely on their RVs for shelter. A single violation of the OSV Ordinance is an infraction punishable by a fine of $100; a second violation is punishable by a fine of $200; and subsequent violations are punishable by fines of $500 each. Each separate day of unlawful parking constitutes a separate offense, and a violation beyond the third offense within a 12-month period is a misdemeanor punishable by a fine of $1,000 and imprisonment for up to 6 months. Pacifica Municipal Code Title 1, Chapter 2, § 1-2.01. In addition, after five or more unpaid tickets, a cited vehicle can be towed—meaning the person living in it would lose their only home. Cal. Veh. Code § 22651(i)(1); *see also* Pacifica Municipal Code Title 1, Chapter 2, § 1-2.01(g) (allowing for summary "abatement" of conditions that exist in violation of City law).

6.      The OSV Ordinance effectively outlawed all RV parking throughout Pacifica— day or night—for vehicularly housed residents with RVs or large vehicles. In other words, the OSV Ordinance created a citywide ban on public RV parking. The City began aggressively enforcing the OSV Ordinance on September 15, 2020. Without adequate signage indicating where the OSV Ordinance applied, the City began ticketing RVs throughout Pacifica. Plaintiffs, and many other RV housed individuals, began accumulating costly tickets and desperately tried to figure out where they could park. The mounting cost of tickets and threat of criminal punishment was enough to make many vehicularly housed Pacifica residents flee the City completely. For others, like Plaintiffs, their need to remain in or visit the City has thrown life into turmoil. Despite their best efforts to abide by the law, and even when parking on streets supposedly not covered by the OSV Ban, they continue to accrue financially devastating tickets and become closer to facing criminal charges or losing their homes.

7.      The City of Pacifica's blatant attempt to banish those who rely on RVs for housing and mobility violates the U.S. Constitution and the California Constitution. The OSV Ordinance also has a particularly disproportionate burden on and discriminates against houseless people with disabilities who live in vehicles based on their disabilities, in violation of the

antidiscrimination protections of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Plaintiffs have all been directly impacted and harmed by the City's Human Habitation and OSV Ordinances. Each has been assessed expensive fines, which they do not have the ability to pay, and each believes that remaining in the City, or even returning to visit, will result in further indignities including unpayable fines and criminal penalties.

8.      Therefore, on behalf of themselves and a class of individuals similarly situated, Plaintiffs bring the following claims for relief against the City: **(1)** Violation of Plaintiffs' Right to Free Movement (Fourteenth Amendment of the U.S. Constitution); **(2)** Violation of Plaintiffs' Right to Free Movement/Travel (Article I, §§ 7(a) and 24 of the California Constitution); **(3)** Violation of Substantive Due Process—Void for Vagueness (OSV Ban) (Fourteenth Amendment of the U.S. Constitution); **(4)** Violation of Substantive Due Process—Void for Vagueness (Human Habitation Ban) (Fourteenth Amendment of the U.S. Constitution); **(5)** Cruel and Unusual Punishment (Eighth Amendment of the U.S. Constitution); **(6)** Violation of Substantive Due Process—State Created Danger (Fourteenth Amendment of the U.S. Constitution); **(7)** Excessive Fines and Fees (Eighth Amendment of the U.S. Constitution); **(8)** Excessive Fines and Fees (Cal. Const. Article I, § 17); **(9)** Unlawful Seizure of Property by Towing (Fourth Amendment of the U.S. Constitution); **(10)** Unlawful Seizure of Property by Towing (Article I, § 13 of the California Constitution). Additionally, Plaintiffs Geary, Miles, Bode, and Sanders also bring claims, on behalf of themselves and a disability subclass: **(11)** Violation of Title II of the Americans with Disabilities Act; **(12)** Violation of Section 504 of the Rehabilitation Act of 1973; **(13)** Violation of the California Disabled Persons Act, and **(14)** Violation of California Government Code Section 11135.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

9.      This Court has jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12132, 29 U.S.C. § 749, and 42 U.S.C. § 1983 because Plaintiffs' claims arise under the laws and Constitution of the United States. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the California state law and California constitutional claims because Plaintiffs' state claims are related to Plaintiffs' federal claims, arise out of a common

CLASS ACTION COMPLAINT

nucleus of operative facts, and form part of the same case or controversy under Article III of the Constitution.

10.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)–(c) because the Defendant, the City of Pacifica, is within this District and all events giving rise to Plaintiffs' claims occurred in this District. The relief that Plaintiffs seek is within this Court's power to grant.

11.     Because the events and omissions giving rise to Plaintiffs' claims occurred in San Mateo County, this case should be assigned to the Northern District's San Francisco Division or its Oakland Division. N. D. Cal. Civ. L.R. 3-2(c).

**PARTIES**

**Plaintiffs**

12.     Plaintiff **Sean Geary** first set roots in Pacifica in 1994 and has lived in Pacifica neighborhoods throughout his life. He got married on Rockaway Beach, and, until very recently, worked at a business in the neighborhood. When he was working, he netted approximately $800 in income per month after making required child support payments. His low income has made the cost of renting in Pacifica impossible. So, to avoid sleeping outside on the streets, he sleeps in a rented Ford RV that he parks on a public street.

13.     Mr. Geary began receiving tickets under the OSV Ordinance the day the City began enforcing it. He has received at least eight tickets for violating the OSV Ordinance, including while parked on streets without any signs indicating OSV parking is prohibited and on streets the OSV Ordinance seems to indicate should allow OSV parking. Although the tickets are issued to the vehicle's owner, to whom the RV is registered, Mr. Geary is responsible for any tickets issued under the OSV Ordinance. Because he has received almost three times the yearly limit of citations, Mr. Geary is at risk of being criminally prosecuted. Certain Pacifica police officers have told him he could park his RV in Rockaway Beach so long as he moved every seventy-two hours. When Mr. Geary followed the officers' guidance and moved his RV every seventy-two hours, he was ticketed under the OSV Ordinance by other Pacifica police officers. When Mr. Geary tried to park on streets that were not on the list of prohibited streets posted

CLASS ACTION COMPLAINT

6

online by the City, he continued to be ticketed, leading him to believe there is nowhere he can safely park in Pacifica.

14.     Mr. Geary has severe bipolar disorder with mania and attention-deficit disorder, mental health disabilities that affects his executive functioning, making it difficult for him to manage his daily affairs. It has become impossible for him to keep track of the citations he has received, and he cannot pay them. His bipolar disorder has been exacerbated due to stress caused by the City's OSV Ordinance. He left Pacifica temporarily for Daly City to avoid enforcement of the OSV Ordinance, but this relocation worsened the negative effects of his disability. Moreover, his exacerbated bipolar disorder has caused him to lose his sense of time, which has made it increasingly difficult for him to find places to park or to look for more permanent work.

15.     Mr. Geary returned to Pacifica to live close to his job. However, he recently lost this job, and is now unemployed. Having an RV allows him to avoid public transit during the ongoing COVID-19 pandemic, lets him keep his dog, and provides him with security and a routine that helps him manage his disability. He fears having his RV towed because he cannot afford to pay the citations he has received as a result of the OSV Ordinance. Mr. Geary also fears the risk of contracting COVID-19 if he is forced to keep moving or abandon his RV and live on the street.

16.     Plaintiff **Jared Carr** is 44 years old and moved to Pacifica in January 2020 to work in residential construction in the City. He currently works part-time on several homes in the Linda Mar neighborhood of the City. However, due to the COVID-19 pandemic, his work has slowed down considerably, and he rarely has enough money to eat every day, let alone pay for an apartment in the City. Mr. Carr currently lives in an RV so he can be close to his work. The RV is also Mr. Carr's source of transportation, and if he is forced to leave the Linda Mar neighborhood, he will lose his job and income.

17.     Mr. Carr has received at least twenty-seven tickets under the OSV Ordinance since the City began enforcing it. When combined with late fees, Mr. Carr faces at least $3,228 in additional debt due to the OSV Ordinance. Mr. Carr has no ability to pay this amount. Furthermore, because he has received almost three times the yearly limit of citations, Mr. Carr is

CLASS ACTION COMPLAINT
7

at risk of being criminally prosecuted. Due to these tickets, Mr. Carr has a DMV hold on his RV, which will make it impossible for him to renew his registration, subjecting him to further fines and fees and possible criminalization. Mr. Carr has received several tickets for parking on streets that are not on the City's list of prohibited parking streets for oversized vehicles. He has also been told to repark by Pacifica Police Department officers, only to receive tickets in the places where they told him to park. Pacifica Police Department officers have repeatedly threatened to tow Mr. Carr's RV due to the number of tickets they have given him.

18.     If Mr. Carr's RV is towed, he will lose his only housing and—due to the lack of shelters in Pacifica—would be forced to live on the street. Housed neighbors in the Linda Mar neighborhood have repeatedly harassed Mr. Carr, smearing dog feces on the door handle of his vehicle, throwing eggs at his windshield, and posting threatening messages about him on the Nextdoor website. Pacifica Police officers have ignored this abuse and have instead responded to Mr. Carr's complaints by suggesting he leave the City.

19.     Plaintiff **Linda Miles** is 60 years old, grew up in Pacifica, and lived there for nearly her entire life. She currently lives in Clear Lake, California, having left Pacifica approximately five years ago because she was priced out of her apartment, which was a one-bedroom apartment for which she was charged approximately $2,500 per month in rent. She has since lost permanent housing because she is retired and survives on a fixed disability income provided by Supplemental Security Income ("SSI"), which is insufficient to pay rent. To afford shelter, she now resides in an RV, which she also relies upon for transportation. Ms. Miles still frequently travels to Pacifica to visit her son, who lives there with his wife and three children in a one-bedroom apartment. Her son's family does not have space for her to stay when she visits, and she cannot afford any other type of shelter in Pacifica or the $100 per night private RV Park.

20.     Ms. Miles's disabilities include anxiety, depression, and Type 2 diabetes. Living in her RV enables Ms. Miles to manage her mental health and physical disabilities. Her anxiety makes it difficult to be around other people, and she feels safe and comfortable in her private space. She is also able to manage her diabetes in her RV because she has space to store medicine and store and cook healthy food. Her diabetes places her at higher risk for infection from

CLASS ACTION COMPLAINT
8

diseases including, but not limited to, COVID-19, as well as for complications from COVID-19. This risk would be worsened if she were to lose her RV and be forced to live on the street. The OSV Ordinance has already exacerbated Ms. Miles's mental health conditions; worrying about being ticketed by the police and losing her home has left her in a constant state of heightened anxiety and made it difficult for her to sleep.

21.     Ms. Miles has received at least one notice for an alleged violation of the OSV Ordinance despite parking where there are no signs indicating that OSV parking is prohibited. She currently parks in a public lot that prohibits overnight parking, where she has not yet received a ticket. However, she lives in fear, and has been forced to cover all her windows and keep her lights off at night to avoid being harassed or ticketed under Pacifica's Human Habitation Ban. With the OSV Ban in place, she cannot visit the City or her family in the City without the threat of being ticketed, towed, or criminally charged.

22.     Plaintiff **Harry Bode** is a 60 years old, lifelong resident of Pacifica. His daughter lives in Pacifica and helps him manage his medical care and finances. Mr. Bode is a retired truck driver and lives on a fixed income of $1,430 per month, $430 of which is a Teamsters pension that will drop to $190 when he turns 62, and $1,000 of which is provided to him by his siblings from an inheritance that will eventually run out. Mr. Bode lost his housing about five years ago when he was forced to leave his family home in Pacifica after his father passed away. Mr. Bode cannot afford to rent an apartment in Pacifica at market-rate on his fixed income. Since losing his stable housing, he has sought shelter in his vehicle, a Fleetwood Bounder RV which he parks on various streets within the City. With the assistance of the Pacifica Resource Center, Mr. Bode recently signed a lease for an apartment using a new HUD permanent housing choice voucher, for which he will pay $100 per month towards rent and utilities. At the time of filing, Mr. Bode had just moved into this apartment. If Mr. Bode were to lose his housing voucher, he would be unable to afford Pacifica rent and would likely have to live in his vehicle again. Mr. Bode still owns his RV, but he may be forced to sell it because he cannot park it in Pacifica with the OSV Ordinance in place.

23.     After the OSV Ordinance went into effect and while he lived in his RV, Mr. Bode had a great deal of trouble trying to find an area where he could safely park and was ticketed at least three times and charged at least $240. He received three warnings in August 2020 on Old County Road in Rockaway Beach. He was ticketed by Pacifica police on September 1 and September 15, 2020, in that same location. The police never told him where parking was permissible. He was also approached by police on September 4, 2020, while he was parked in his friend's driveway. He told the police he was working on his RV in his friend's driveway with permission, but the police said they had to follow through on a complaint from a neighbor. On October 5, 2020, Mr. Bode was parked at the SamTrans lot in the Linda Mar neighborhood across from the shopping center. After a sheriff told him to leave, he parked in what seemed like an out-of-the-way location on Roberts Road. There, even though the parking space was safe and discrete, he received another ticket under the OSV Ban.

24.     Mr. Bode has faced harassment from residents in and around Rockaway Beach, who have posted photos of his RV on Nextdoor and made negative comments about him being parked there in the neighborhood and at the public parking lot on San Marlo Way near the lighthouse. Mr. Bode feels awful being told he is not welcome in Pacifica, the community where he has lived his whole life.

25.     Mr. Bode's disabilities include pulmonary hypertension. He has difficulty breathing and is winded easily. He sees doctors who treat his disability at Mills Peninsula Medical Center in Burlingame, California as well as at a clinic in Daly City and at Stanford Hospital. During his encounters with Pacifica police, Mr. Bode told officers that he has a disability and that the stress of their enforcement of the Ban was bad for his condition. He requested an exemption from the OSV Ordinance on the basis of his disability. The officers did not respond.

26.     Plaintiff **Stephen Sanders** has lived in Pacifica since 1995, when he came to the City after being kicked out of his parents' house in North Carolina at age sixteen. He has a long history of mental and emotional disabilities and received mental health treatment as a child at

Cherry Hospital in Goldsboro, North Carolina, and in group homes. He has been houseless on and off for most of his adult life but has found friends and a support system in Pacifica.

27.     Mr. Sanders works as a delivery driver for DoorDash and lives on a fluctuating income. Although he used to earn approximately $1,500 per month, his income declined steeply because the popularity of driving for DoorDash increased during the COVID-19 pandemic and there is now more competition for routes. As a result of the steep decline in available work as a delivery driver, he recently qualified for Pandemic Unemployment Assistance benefits of $450 per week that will expire in six to seven months. Mr. Sanders's disabilities include attention-deficit disorder ("ADD"), which makes it difficult for him hold more permanent, traditional, better-paid employment. His disabilities restrict his earning capacity, which makes the cost of renting in Pacifica prohibitive for him. To have a safe place to call home, he sleeps in his small Chevy G30 school bus that he has modified into a dwelling space.

28.     Mr. Sanders parked on various streets and public lots in Pacifica until the City passed the OSV Ordinance. When the OSV Ban went into effect, Mr. Sanders could not find a place where he could safely park. He spent increasing amounts of time and gasoline trying to find parking, but the City's unclear mandates made it impossible for him to find a safe place to park. While driving around Pacifica trying to locate safe spaces, he noticed oversized commercial vehicles in areas subject to the OSV Ordinance that did not receive tickets. He looked on the City's website at the list of streets where he could not park, and it looked like he could not legally park his bus anywhere. He began parking at the public lot at Francisco Boulevard and Salada Avenue, where there was no sign prohibiting OSV or overnight parking. A police officer told him he could not park there. When Mr. Sanders said there was no sign prohibiting it, the officer said the City would put one up, and soon there was a "no overnight parking" sign put up there. The only people who would park overnight in that lot were RV dwellers. Eventually, he was forced to leave the City to avoid being ticketed or towed.

29.     Losing the ability to park his bus in Pacifica has caused him to feel emotionally distressed. He now parks in an area behind Stonestown Galleria near Lake Merced in San Francisco, where he is safe from constant ticketing. He has remained as close as he can to

Pacifica to allow him to return to visit friends and family, including someone who is like his surrogate mother. He also remains near Pacifica to have access to the services of the Pacifica Resource Center. The Resource Center helps him apply for safety-net services for which he is eligible like housing, health care, and government benefits. Without that assistance, he would be severely disadvantaged and unable to obtain disability benefits like SSI.

30.     Mr. Sanders fears ticketing, towing, and potential criminal prosecution if he returns to Pacifica with his vehicle. Mr. Sanders has spoken on the verge of tears at City Council meetings to advocate for safe parking, but feels silenced by the City's actions, which have driven him out of Pacifica.

**<u>Defendant</u>**

31.     Defendant **City of Pacifica** ("City") is a local government agency and subdivision of the State of California. Defendant City is responsible for passing the OSV Ordinance and the Human Habitation Ordinance, and through its agents the Mayor, City Council, City Attorney, Parking Enforcement, Police Department, and Police Chief enforces the Human Habitation Ban and the OSV Ban and cites Plaintiffs and Class members for violations.

## PLAINTIFFS' PROPOSED CLASS

32.     Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and all other persons similarly situated. The proposed class is defined as: "All persons who are unable to afford temporary or permanent housing in Pacifica and currently reside, seek to reside, or have resided in an OSV within the City between December 9, 2019 (the date that the OSV Ordinance was passed) and present" (the "Class").

33.     The proposed Class meets the Rule 23(a) requirements. The Class meets the numerosity requirement based on community records and the City's estimates of a daily count residency of seventy-five RVs parked on City streets prior to the OSV Ordinance. The interests of the Plaintiffs are not antagonistic to, or in conflict with, the interests of the Class as a whole, and there are no material conflicts between Plaintiffs' claims and those of absent Class members that would make class certification inappropriate. The attorneys representing the Class are highly

1 trained, duly qualified, and very experienced in representing plaintiffs in civil rights class

2 actions.

3      34.     Questions of law and fact that are common to all members of the Class include,

4 but are not limited to, the following:

5           a.     Whether the OSV Ordinance prevents Class members from residing

6                within or traveling to Pacifica;

7           b.     Whether the OSV Ordinance is justified by a compelling governmental

8                interest;

9           c.     Whether the OSV Ordinance has been narrowly tailored to serve any such

10                compelling governmental interest;

11           d.     Whether the City intended, through the OSV Ordinance, to banish those

12                persons who are not wealthy enough to own or rent property in Pacifica;

13           e.     Whether Class members are using property within the City for the purpose

14                for which such property was designed, namely the parking of vehicles;

15           f.     Whether the Human Habitation Ban is broadly defined, and its definition

16                fails to clearly indicate the line between innocent and illegal activity;

17           g.     Whether Class members have any safe housing alternative to sheltering in

18                their RVs in the City of Pacifica;

19           h.     Whether, by reasons of the facts alleged in this Complaint, the

20                Defendant's OSV Ban violates one or more of the constitutional and

21                statutory provisions enumerated herein.

22      35.     Plaintiffs' claims are appropriate for class treatment pursuant to Rule 23(b)(2)

23 because the City has acted to pass and enforce the OSV and Human Habitation Ordinances

24 which are generally applicable to the Class as a whole, thereby making appropriate final

25 declaratory and injunctive relief appropriate respecting the class as a whole.

26      36.     Plaintiffs' claims are appropriate for class treatment pursuant to Rule 23(b)(3)

27 because Plaintiffs' claims are typical of, and not antagonistic to, the claims of all other members

28 of the Class. Defendant's adoption and implementation of the OSV Ban, alleged herein, has

harmed Plaintiffs and members of the proposed Class in ways that are either identical or substantially similar. Plaintiffs, by advancing their claims, will also advance the claims of all other similarly situated individuals. Any individual issues relating to restitution owed to individual Plaintiffs and Class members can be determined by an easy and mechanical process, which would not undermine the efficiency of adjudicating this controversy as a class action.

## PLAINTIFFS' PROPOSED DISABILITY SUBCLASS

37.    Plaintiffs also bring this action on behalf of a subclass, referred to as the "Disability Subclass" or "Subclass," which is defined as: "All Class members who have a 'disability' as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102."

38.    The proposed Disability Subclass meets the Rule 23(a) requirement of numerosity based on the high percentage of unhoused people who have disabilities. According to the United States Interagency Council on Homelessness, an estimated 24% of people experiencing homelessness on any given day are people with disabilities who meet the definition of chronically homeless.[1] These rates are higher for unsheltered homelessness, the category that includes the vehicularly housed.[2] In Los Angeles County in 2017, for example, 33% of unsheltered unhoused people reported having a mental illness, 19% reported having a physical disability, and 19% reported having a substance use disorder.[3] In San Mateo County in 2019, 22.7% of unsheltered unhoused people reported having a severe mental illness.[4] A January 2015 San Mateo County survey of its unhoused population found that 42% of those living in an emergency shelter and 55% of those living in transitional housing—two categories that often overlap with the vehicularly housed population—had a disability.

---

[1] U.S. INTERAGENCY COUNCIL ON HOMELESSNESS, *Homelessness in America: Focus on Chronic Homelessness Among People With Disabilities* (Aug. 2018), available at: https://www.usich.gov/resources/uploads/asset_library/Homelessness-in-America-Focus-on-chronic.pdf.
[2] *Id.*
[3] *Id.*
[4] Human Services Agency, *2019 San Mateo County One Day Homeless Count and Survey*, COUNTY OF SAN MATEO 24 (June 2019), available at: https://hsa.smcgov.org/sites/hsa.smcgov.org/files/2019%20One%20Day%20Homeless%20Count%20report.pdf.

39.     Questions of law and fact common to all members of the Disability Subclass include, but are not limited to, the following:

a.     Whether Defendant's enforcement of the OSV Ban discriminates against Subclass members on the basis of disability; and

b.     Whether Defendant has failed or refused to provide reasonable modifications of its policies as required under the ADA, 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 749 by failing to provide a process for individuals with disabilities to seek an exemption from enforcement or an alternative in the form of safe parking.

40.     Plaintiffs who have disabilities have claims that are typical of, and not antagonistic to, the claims of other Subclass members. Plaintiffs and Disability Subclass members have been similarly harmed by the OSV Ban's disproportionate burden on people with disabilities and seek similar relief in the form of a process by which Subclass members with disabilities can seek a reasonable modification from the OSV Ordinance in the form of an exemption from enforcement or an alternative such as a safe parking program. The claims of named plaintiffs with disabilities arise from the same practices and conduct that give rise to the claims of all Subclass members and are based on the same legal theories.

## ADDITIONAL FACTUAL ALLEGATIONS

### Pacifica's Affordable Housing Crisis

41.     The City of Pacifica has been experiencing a dire housing affordability crisis for years. According to the Pacifica Resource Center, nearly one in ten Pacifica households earns less than $25,000 per year, while Pacifica's median home value has risen to over $1.1 million and the average cost to rent a one-bedroom apartment has soared to over $2,500. A remarkable 43.9% of renters in Pacifica are rent burdened, meaning that they spend more than 30% of their household income on rent. The astronomical cost of housing, coupled with stagnant or declining wages, has pushed many, including Plaintiffs, into vehicularly housed status.

42.     Those who shoulder the greatest weight include the lowest income earners, persons with disabilities, and seniors. According to the most recent Pacifica Housing Element Report, at least 94% of Pacifica renters who are extremely or very low income overpay for housing in Pacifica.[5] While 4.4% of Pacifica residents live in poverty, the percent doubles to 9% for those with a disability.

43.     The situation is not improving. Development in Pacifica has stagnated in recent years. From 1990 to 2000, Pacifica saw the creation of 874 housing units; from 2000 to 2010, only 391 units were created; and, between 2010 and 2020, while the population rose significantly, only around 100 new units were added. Meanwhile, the City has done little to address the housing needs of its most impoverished citizens. During the 2007 to 2014 planning period, the Pacifica Housing Element report determined that 63 new units were needed for extremely or very low-income households, but only 3 new units were built. And, while the lack of affordable housing has squeezed more individuals and families into houselessness, the City has failed to provide any overnight shelter options for those lacking the basic need of housing.

44.     Unsurprisingly, the number of Pacifica residents pushed into houselessness keeps growing. Between 2017 and 2019, houselessness in San Mateo County increased by 21%. Pacifica has the second highest percentage of unhoused persons in the county. Of the "unsheltered houseless" living in San Mateo County, approximately 55% live in RVs, with another 20% living in cars. In Pacifica specifically, from early 2018 through 2019, the number of people living in RVs or another vehicle ranged from 50 to 75 according to the City Council. According to a Pacifica taskforce addressing houselessness in the City, approximately half of people living in RVs in the City had previously lived in an apartment or house in the City. Compounding this crisis, during the COVID-19 pandemic RV park prices have sharply increased. Many RV parks charge as much as $100 per night, translating to around $3,000 per

---

[5] The Pacifica Housing Element is one of twelve elements of the Pacifica General Plan, which is periodically adopted by the Pacifica City Council. *See, e.g.,* https://www.cityofpacifica.org/civicax/filebank/blobdload.aspx?BlobID=6667.

month. Consequently, impoverished residents living in RVs have no choice but to park on public streets.

**Pacifica's Vague Human Habitation Ban**

45.     Instead of providing affordable housing or free shelter to its struggling residents, the City has taken steps to make them leave by enacting laws to punish the poor. Targeting the growing vehicularly housed population, the City enacted the Human Habitation Ordinance and began enforcing its Human Habitation Ban, which makes it an infraction, and potentially a criminal misdemeanor, to engage in "human habitation" in a vehicle between the hours of 10:00 p.m. and 6:00 a.m. While hoping the law would push out those living in vehicles, Pacifica police officers have had difficulty enforcing the Human Habitation Ban. This is because it is nearly impossible to prove a violation or even to fairly determine what conduct is punishable under the language of the code.

46.     In 2018, despite the Human Habitation Ban, the vehicularly housed population of Pacifica continued to grow, and the City doubled down on wanting them out. The City considered amending the Human Habitation Ban to expand its prohibition of human habitation from a nighttime-only ban to a ban that would apply all hours of the day. However, the City "tabled" this amendment after learning public sentiment "perceived [this amendment to] target individuals who were facing difficulties and were forced to live in their recreational vehicles." The City Attorney also acknowledged the Human Habitation Ban was potentially unconstitutional based on its vague language, citing *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014).

**The Discriminatory Intent Behind Pacifica's OSV Ban**

47.     Throughout 2018 and 2019, the City looked for other avenues to expel its vehicularly housed population. The City Council held a meeting in mid-2018 discuss what it termed "Homelessness/Recreational Vehicle Issues." Citing complaints made by housed residents against RV-housed residents, and voicing concern over the uptick in the number of RVs parked on City streets, then-Mayor John Keener told City staff he felt the City should outlaw RV parking on all City streets to address the "RV Problem." There was no discussion of

CLASS ACTION COMPLAINT
17

traffic safety underlying this call— "RV Problem" meant Pacifica residents' objections to the sight of RVs on City streets, even though those RVs provided shelter and dignity for those who could no longer afford to pay for fixed housing. Other councilmembers agreed with the then-Mayor and directed City staff to craft a proposed ordinance banning RV parking on all City streets.

48.     City staff returned to the City Council with their proposal in February 2019. This proposed ordinance called for an explicit ban on all RV parking on City streets, with the purpose and intent of targeting vehicularly housed residents. At that meeting, though, members of the community who had lost permanent housing and were living in RVs argued against the ban. One woman told the City she was a teacher who had lost her apartment due to rent increases and, as a result, lived in an RV in the City so she could be close to her elderly mother. Another woman told the City she moved into an RV after losing her apartment in Pacifica. A third RV resident told the City he and his partner lived in an RV in the City and were scrupulous about respecting their environment. Members of the City Council, however, stressed concerns about the negative impact those living in RVs had on the "quality of life" and property values of Pacifica homeowners and likened the RV dwellers to "visible blight."

49.     Still motivated to rid the City of vehicularly housed residents, but deterred from doing so explicitly, the City Council met on November 12, 2019 and discussed how to pretextually address their "RV Problem" without legal complications. At this meeting, Pacifica Police Chief Steidle told the City Council: "Just recently, last month, the City of Mountain View adopted ordinances prohibiting oversized vehicle parking on certain narrow streets and streets with or adjacent to Class II bikeways. These ordinances were adopted focusing on certain health and safety concerns." While the Council had not discussed any bona fide issues with RVs causing health or safety concerns in Pacifica, the Police Chief said: "Any Pacifica ordinance considered now or in the future should also focus on these concerns given the recent 9th Circuit Court of Appeals decision, the *Martin vs. Boise* decision." The City staff expressed optimism that claiming "traffic concerns" could justify a ban targeting vehicularly housed Pacifica residents.

50.     The City's concerns were not traffic or safety related, but the City began using traffic safety as a pretextual purpose for imposing its desired outcome—fewer vehicularly housed residents in Pacifica. The City did not conduct any traffic or safety studies related to RVs, nor did it have any evidence to show RV parking posed any traffic, safety, or health risk. As one Councilmember conceded, any assertion RVs were a traffic or safety concern was "pure conjecture." The actual motivation was to banish those living in RVs based on discriminatory contentions that they were undesirable and unsanitary neighbors or that having the vehicularly housed in the City would damage housed residents' property values.

**The City Passes the OSV Ban Targeting Vehicularly housed People**

51.     On December 9, 2019, the City passed the OSV Ordinance, which created the OSV Ban. The stated purpose of the OSV Ordinance was to improve traffic safety, but this was pretext. There were no traffic safety concerns. Tellingly, the Ordinance's whereas clauses noted "the City has experienced a significant increase in the number of oversized vehicles, including motorhomes and trailers, that are regularly or routinely parked on City streets for long periods of time." The Ordinance also stated the City had to "address complaints relating to the parking of oversized vehicles."

52.     While the OSV Ordinance referred to oversized vehicles, the vehicles being targeted were not targeted for their size. Instead, "oversized vehicle" was defined to encompass vehicles and RVs commonly occupied by houseless persons. The definition of Oversized Vehicle, provided in in Pacifica Municipal Code Section 4-7.1204, includes any single vehicle or combination of vehicles that is (i) twenty-two feet or more in length; (ii) seven or more feet in width; and (iii) eight feet in height. These dimensions were not tailored for any traffic safety reason. In fact, the City opted to exclude from its OSV Ban any oversized vehicles used for construction or delivery regardless of size.

53.     As noted previously, the OSV Ban makes it unlawful for RVs to be parked on City streets at any time day or night. Specifically, the OSV Ban makes it unlawful to park or leave standing an OSV on any road less than 40 feet wide, or any other streets that "have width constraints which cause the street to be unsafe for traffic," as determined by either the City

CLASS ACTION COMPLAINT

Council or the city's Traffic Engineer. The OSV Ban also makes it unlawful to park or leave standing any OSV within one hundred feet of any uncontrolled intersection on public streets or on public streets where parking of an OSV encroaches upon an identified bicycle lane with defined boundaries.

54. Despite the seemingly limited and objective restrictions on where OSV parking was to be prohibited under the OSV Ordinance, the City has **not** limited its OSV parking restrictions to streets meeting these specifications. Instead, the City has used the discretionary authority contained in the OSV Ordinance to ticket vehicles that pose no safety hazards. Commonly, the City has ticketed vehicularly housed individuals based solely on housed residents' complaints. Despite Plaintiffs' RVs being parked on streets that do not meet the specifications in the OSV Ban, the City has ticketed them for violating the OSV Ban.

55. The OSV Ordinance's harsh penalties, cited at ¶ 6 above, pose a dire threat to Plaintiffs and other vehicularly housed individuals—threatening to take their homes.

**Without Notice, The City Evicts Plaintiffs Using the OSV Ban**

56. The City began aggressively enforcing the OSV Ordinance on September 15, 2020, handing out twelve tickets under the OSV Ban on the first day alone. Some RV dwellers received multiple tickets on that day—each ticket totaling $78. Mr. Geary was ticketed that day on a street he had parked on numerous times without incident. Mr. Carr was ticketed the next day. During the first five days of ticketing, the City issued a total of fifty-three tickets to RV-housed residents, amounting to a burden of over $4,000 on people who had already lost other forms of housing. This practice continued unabated over the following weeks, as the City handed out a total of $6,786 in tickets during the first month of ticketing alone. Most of these tickets were given to indigent vehicularly housed residents.

57. The City's enforcement began and has continued with inadequate and confusing notice. The City has put up very few signs indicating where RV parking is prohibited. Those signs that currently exist have been placed in a haphazard, confusing, and inconsistent manner, making it impossible for Plaintiffs and Class members to understand where they can park without violating the OSV Ban. In many instances, one street sign is placed at the beginning of a

CLASS ACTION COMPLAINT

neighborhood to indicate that the OSV Ban prohibits RV parking for all streets in many miles of neighborhood streets. In other neighborhoods, the City has placed a sign at the entrance to the neighborhood prohibiting RV parking at only some of the streets in the neighborhood. The signage makes it impossible to determine which streets (if any) are not covered by the OSV Ban. In other areas of the City, signs have been placed on streets where, under the OSV Ordinance, RV parking should be permitted based on size and other specifications. Some of the City's signs indicate that OSV parking is completely prohibited throughout Pacifica.

58.     The City put up a public website that purports to list the streets where OSV parking is prohibited under the OSV Ban. However, while the City's list implies that OSV parking is allowed on streets that are *not* on the list, this is not so. Many, if not all, of the streets that are not on this list are prohibited for OSV parking other reasons. Some have red curbs; some have no parking due to driveways. Worse still, Plaintiffs have been ticketed on streets not on the list merely because neighbors complained about them being there. The City, targeting those who are vehicularly housed, has ticketed people for violating the OSV Ban for parking on streets that are neither on the prohibited list nor have signs identifying that OSV parking is prohibited. In fact, Pacifica's website, where the list is posted, admits "not every prohibited street has signage," and the list "may be updated as changes are made to Pacifica's roadways that may make the area either safe or unsafe for oversized vehicles to park on."[6] This admission demonstrates that, through the OSV Ordinance, the City has given itself standardless discretion to ticket and harass vehicularly unhoused Pacificans, including Plaintiffs. As intended, the City has used this discretion to ban RV parking throughout the City. There is no public listing of where RVs *can* be parked in Pacifica. This is because the City does not want RVs parked within its borders; the City passed the OSV Ordinance to get vehicularly housed people to leave.

59.     Furthermore, some streets that do not meet any of the street specifications for which OSV parking can be prohibited under the OSV Ordinance *do* have signs prohibiting OSV

---

[6] CITY OF PACIFICA, *Oversized Vehicle Parking*, available at: https://www.cityofpacifica.org/depts/police/vehicles/oversized_vehicles_parking.asp (last accessed March 8, 2021).

Parking. For example, on Esplanade Avenue, which was once a central place where houseless people historically parked their RVs, the City has erected many "No OSV" parking signs, citing the OSV Ban. These signs are placed consistently on the block between Bill Drake Avenue and West Manor Drive. The width of this street is over 50 feet wide, and it does not meet any of the criteria that the City claims make streets unsafe for RV parking. So, while the signs clearly indicate RV parking is prohibited, there is no valid reason why this street should be subject to the OSV Ban.

60.     Worsening the unclarity of where the OSV Ban applies, the City has enforced the OSV Ban in a discriminatory matter aimed to intimidate and push out the vehicularly housed. Pacifica police officers have given inconsistent and often incorrect information to Plaintiffs and other Class members concerning where they could safely park their RVs. On various occasions, Class members were informed by police officers that they could safely park in a particular location, only to later be ticketed when they parked at that location.

61.     As a result of the City's inconsistent, haphazard, confusing, and misleading notices, Plaintiffs and other vehicularly housed residents have frantically tried to figure out where RVs can be parked in Pacifica under the OSV Ban—without success. They have found themselves subjected to ticketing no matter where they go.

62.     Mr. Carr was ticketed on the first day of the OSV Ban on Oddstad Boulevard, nearly two miles away from the nearest OSV Ban sign. Despite there being no signs in sight and trying to move his car to different streets in the Linda Mar neighborhood, he received additional tickets. He then asked a Pacifica police officer where he could park without being ticketed and was told that he could park back on Oddstad Boulevard. However, when Mr. Carr parked there, he received yet another ticket. Similarly, after receiving a ticket on the first day of ticketing under the OSV Ban on a street with no sign, Plaintiff Harry Bode moved his vehicle to Roberts Road, a street that is well over 40 feet wide that also had no signage prohibiting RV parking. Within one day, Mr. Bode received another ticket at that location.

63.     In the first months of ticketing under the OSV Ban, Plaintiff Geary was ticketed in the Rockaway Beach neighborhood and then ticketed again two days later. Realizing that he

could not park in the neighborhood in which he had grown up, Mr. Geary drove north up Palmetto Avenue, past numerous signs prohibiting oversized vehicle parking, until he arrived at and parked on a street with no signage. Just days later, Mr. Geary was ticketed on that street. After this ticket, Mr. Geary looked up the OSV Ordinance and found the list of prohibited parking streets. Mr. Geary cross-checked the list until he arrived at a street not listed, which he drove to and parked on. Without any signage or listing, Mr. Geary thought he was safe, but it turned out to be federal property on which parking was also prohibited.

64.   No community caretaking need justified the tickets Plaintiffs and others have received for alleged violations of the OSV Ordinance. In all cases, ticketed vehicles were parked in otherwise legal parking spaces, by the curb, not obstructing the safe flow of traffic, not blocking a driveway, not obstructing a fire lane or bike path, not abandoned, and not otherwise creating a public danger or nuisance.

65.   Each of the named Plaintiffs has spent hours searching for parking—unsure whether stopping their vehicle may result in costly tickets, towing, or even criminal charges. There remains gross vagueness regarding on which streets—if any—RVs can be safely parked in the City. Furthermore, the City often enforces the OSV Ban based on housed residents' complaints. This means vehicularly housed residents are subject to infractions under the OSV Ban if a housed resident chooses to complain about them—regardless of the street or street size. Furthermore, the City Police Officers often threaten those in RVs with tickets or towing even when they are parked on streets that are not supposed to be subject to the OSV Ban. The OSV Ordinance's lack of clarity and discriminatory enforcement has resulted in an understandable chilling effect.  Pacifica's vehicularly housed residents, like Plaintiffs, have either been forced out of the City or have been forced to consider leaving the City.

**The OSV Ban Privileges Residents in Fixed Housing over RV Housed Residents**

66.   Following the passage of the OSV Ordinance, the Unhoused in Pacifica Taskforce worked to create a pilot parking program that would allow for the parking of approximately ten to twenty RVs on City streets. At a July 15, 2020 City Council meeting devoted to the proposed "safe parking" program, the Assistant City Attorney warned Councilmembers that the OSV

Ordinance was vulnerable to legal challenge because its prohibition on parking such vehicles "could be considered criminalization of conduct that is an unavoidable consequence of being homeless," adding that "one way to avoid such a challenge would be to create a ["safe parking"] program…which would allow some parking options for homeless individuals." This warning went unheeded, and instead the City doubled down on its attempt to banish the unhoused. Indeed, at the same City Council meeting, a Councilmember noted that the City "passed the oversized vehicle ordinance to not park here," and that if "someone still stays in Pacifica," a permitted safe parking option would simply "reward" them for that undesirable behavior.

67.     At the same time, the City was carving out a temporary exemption to the OSV Ban for RV owners who also own or rent fixed housing in the City. Specifically, the City amended the OSV Ordinance so it would not apply to recreational vehicles displaying a valid temporary permit under Pacifica Municipal Code Title 4, Chapter 7, Article 11 § 4-7.1206. To obtain a permit, a resident must have a permanent address in Pacifica—in other words, the applicant must reside in fixed housing in Pacifica. A temporary permit holder may then "park the recreational vehicle in front of the residence where the recreational vehicle is registered or in front of the residence where the person in control of the recreational vehicle resides" for "thirty-six hours from the date of the time of issuance."

68.     On September 14, 2020, the City Council defeated all possible iterations of a safe parking program for vehicularly housed people. The City also adopted the permit program for Pacifica residents with fixed housing. The City discussed and rejected the options of permitting RV parking at private parking lots and churches. At the end of the discussion, City Manager Woodhouse summed up the councilmembers' unanimous decision: "[The City] will not be moving anything forward through the Planning Commission regarding an ordinance for this permit parking. In terms of vehicularly housed programs, the only direction at this point is to have a conversation with the SF RV Park owner." The City began issuing tickets under the OSV Ban the following day.

**The Harm Inflicted by the OSV Ordinance is Cruel and Escalating**

69.     The OSV Ordinance illegally threatens Plaintiffs with punishment for simply living in the only housing available to them. It is unfair, unreasonable, and cruel in that none of the Plaintiffs can afford to pay accumulating fines for infractions. The threat of being trapped in debt and criminally charged for simply living in their only available housing lingers every time a Plaintiff seeks to return to Pacifica. Even more concerning, under California Vehicle Code Sections 22651 and 22651.7, a vehicle with five or more delinquent parking citations may be towed immediately or temporarily immobilized, also known as "booted."

70.     For Plaintiffs, this means the OSV Ban threatens to take away their single most valuable possession and their only affordable home and shelter simply for trying to park within City limits. In addition, Plaintiffs face the specter of having their tickets sent to the California Department of Motor Vehicles ("DMV") for purposes of withholding their vehicle registration until all parking debts are satisfied. This not only places Plaintiffs in further danger of criminalization and additional fines and fees via enforcement of driving an unregistered vehicle, but also places Plaintiffs at risk of the DMV's escalating fee structure. At the low end, for vehicles registered up to 10 days late, DMV penalties include add-ons of 10% of the vehicle license fee due for that year, 10% of the weight fee due for that year (if any), plus a $10 registration late fee and a $10 CHP late fee. These fees quickly escalate to 60% and $30 respectively for vehicles registered 31 days late and top off at 160% and $100 for vehicles registered more than two years late. Any outstanding parking ticket debt is added on top of the fees.  Furthermore, after an account is 90 or more days late, it is referred to the Franchise Tax Board for additional collections actions, including tax interceptions, wage garnishments and liens.

71.     For Plaintiffs, all of whom are already suffering the brunt of a housing crisis and mounting financial insecurity, the escalating fees sparked by the City's OSV Ban are debilitating. Worse still is the very real threat that the City will seize their RV homes because, as vehicularly housed individuals, they cannot avoid violating the Human Habitation Ban or the OSV Ban. So long as the OSV Ban and Human Habitation Ban remain in effect, Plaintiffs must

either leave Pacifica without return or face escalating injuries and ongoing threats to their home, property, and dignity.

72.     Compounding their injuries, Plaintiffs also face the very real threat of being charged with criminal misdemeanors. As the OSV Ban and the Human Habitation Ban both make misdemeanor charges available as a consequence of getting 3 tickets, Plaintiffs risk imprisonment merely for trying to stay vehicularly housed in Pacifica.

**The OSV Ban Disproportionally Harms Those with Disabilities**

73.     By targeting people who are living in RVs and other oversized vehicles, the City also targeted people with disabilities and imposed a disproportionate burden on people with disabilities. The City has known the burdens of the OSV Ordinance would fall heaviest on people with disabilities because San Mateo County has been drawing the correlation between its unhoused population and disabilities in almost every survey of its unhoused populations over the past decade. In San Mateo County, 22.7% of unsheltered unhoused people (which includes the vehicularly housed) reported having a Severe Mental Illness in 2019. In 2016, San Mateo County reported that of the 2125 unhoused individuals surveyed, 1078 (50.7%) identified as having a "Disabling Condition."

74.     The City also must have known that the federal government has recognized the strong link between houselessness and disability for more than thirty years. Congress recognized the strong link between houselessness and disability in 1987 with the passage of the McKinney-Vento Homeless Assistance Act of 1987. Under its delegated authority, the U.S. Department of Housing and Urban Development ("HUD") defines someone as "chronically homeless" if they are an individual with a disability who has been houseless continuously for at least 12 months or on at least four separate occasions in the last three years. 24 C.F.R. § 91.5(1). A person is deemed houseless if he or she lacks a fixed, regular, and adequate nighttime residence, and includes persons who use RVs or other vehicles for other than temporary living quarters for recreational use. 42 U.S.C. § 11302(a)(1). The strong link between disability and loss of fixed housing is typically an economic one. Many people with disabilities are unable to work due to

their disabilities or only work in a limited fashion. Such is the case for Plaintiffs Geary, Miles, Sanders, and Bode, and the Subclass.

75.     Not only does the OSV Ordinance disproportionally impact people with disabilities, but its harm is exacerbated for people with disabilities. Compared to non-disabled individuals, those with disabilities face disproportionate harm if they are forced to move into public shelters. Those with mental health disabilities risk serious exacerbation of their conditions by losing their private, safe space. Similarly, those with disability-related immune system vulnerabilities are at greater risk for infection and serious illness. In addition, the stress of attempting to comply with the OSV Ordinance disproportionately impacts people with mental health disabilities and/or compromised immune systems.

76.     The OSV Ordinance disrupts the ability of those with disabilities to rely on their vehicle homes to help manage disabilities and avoid health risks. For impoverished Plaintiffs with disabilities, vehicular homes are the only lifeline to maintain a routine and a regular diet—both of which are crucial for successfully managing disabilities including ADD, diabetes, and bipolar disorder. Accordingly, for disabled Plaintiffs Geary, Miles, Bode and Sanders, losing their vehicle and having to live unsheltered on the street would gravely jeopardize their vulnerable mental and physical health. The OSV Ban's disproportionate harm on individuals with disabilities will be compounded so long as the Ban is in place.

**The City Has Failed to Accommodate Plaintiffs' Disabilities**

77.     Plaintiffs notified Defendant about the OSV Ordinance's disproportionate impact on people with disabilities and the need for reasonable modifications on November 11, 2019. Legal Aid Society of San Mateo County (LASSMC) informed Defendant on that date many people who live in their RVs in Pacifica have disabilities impacting their ability to earn income to pay for permanent housing, and, if enacted, the OSV Ordinance would unduly burden Pacifica residents with disabilities and discriminate against them on the basis of disability. On October 30, 2020, LASSMC again informed Defendant the OSV Ordinance discriminates against people with disabilities, and asked that Defendant reasonably modify its policies with respect to the Ban in order to accommodate people with disabilities living in oversize vehicles by either ceasing

enforcement of the Ban against such individuals or providing an alternative such as "safe parking" sites. Defendant has refused to modify its policies. Defendant's counsel, in response to Plaintiffs' reasonable modification request, refused any modifications or action, and stated: "…[T]here is no basis upon which we could recommend to the City that they cease enforcement of the [OSV] Ordinance. As a result of the foregoing, the City will continue to enforce the Ordinance as directed by the Council." Plaintiffs concluded further requests to the City to reasonably modify its OSV ban or enforcement thereof would be futile.

78.     Plaintiff Bode also requested Defendant modify its policies regarding the OSV Ordinance by asking police officers for an exemption from enforcement on the basis of his disability. This request was also denied.

## LEGAL CLAIMS

## FIRST CLAIM FOR RELIEF

### Right to Free Movement/Right to Travel

### (Fourteenth Amendment of the U.S. Constitution)

79.     Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

80.     Since even before the adoption of the U.S. Constitution, residents of all states have "possessed the fundamental right, inherent in citizens of all free governments, [to] peacefully dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom…" *U.S. v. Wheeler*, 254 U.S. 281, 293 (1920). The fundamental right to travel and to "peacefully dwell," although not explicitly enumerated in the Constitution, has been consistently recognized by the courts and has been found to be embedded within the Commerce Clause (Article I, § 8) and the Privileges and Immunities, Due Process, and Equal Protection Clauses of the Fourteenth Amendment. Although sometimes referred to in shorthand fashion as a "right to travel" or "right to freedom of movement," this fundamental right encompasses not only both intrastate and interstate travel, but also the right to remain, free from disturbance, in the place where one has arrived.

81.     Because the right of freedom of movement is a fundamental right, under the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, any ordinance restricting exercise of that right is "presumptively invidious" and is invalid unless the government can prove the restriction has been "precisely tailored to serve a compelling governmental interest." *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982). The OSV Ordinance serves no compelling governmental interest; in fact, the OSV Ordinance was established to expel from the City those who cannot afford permanent residences in Pacifica and who sleep in vehicles as a result. Even if the City had a compelling interest—which it does not—the City failed to take efforts to precisely tailor its OSV Ordinance to serve such an interest, as would be required.

82.     The City's OSV Ordinance violates Plaintiff's fundamental right to free movement for several reasons, including by targeting Plaintiffs and Class members and seeking to banish them from the City based on their lack of fixed housing and socioeconomic status. The OSV Ordinance impermissibly prevents Plaintiffs and Class members from peacefully dwelling in the city of their choosing. The OSV Ordinance also impermissibly favors Pacifica residents in fixed housing and discriminates against Plaintiffs and Class members by denying Plaintiffs and Class members any options for RV parking permits. Furthermore, the OSV Ordinance flatly denies Plaintiffs their right to use City property designed for the purpose for which Plaintiffs seek to use it, namely, prohibiting Plaintiffs and Class members from parking their vehicles on public roads intended for parking. Expelling an entire population from the City is particularly egregious, and dangerous, in light of the ongoing COVID-19 pandemic which threatens the health and safety of this vulnerable population who are at risk of being displaced from the City and critical resources.

**SECOND CLAIM FOR RELIEF**

**Right to Free Movement/Right to Travel**

**(Equal Protection Clause (Article I, §§ 7(a) and 24) of the California Constitution)**

83.     The California Constitution, Article I, §§ 7(a) and 24, protects the right to travel and freedom of movement. "[T]he right to intrastate travel (which includes intramunicipal travel) is a basic human right…implicit in the concept of a democratic society…This personal liberty

consists in the power of locomotion, of changing situation or moving one's person to whatever place one's inclination may direct, without imprisonment or restraint." *In re White*, 97 Cal. App. 3d 141, 148 (1979) (internal citations omitted).

84.   Because the right of freedom of movement is a fundamental right, under the Equal Protection Clause of the California Constitution, any ordinance restricting exercise of that right is "should be regarded with skepticism. If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used." *White*, 97 Cal. App. 3d at 150. The OSV Ordinance serves no compelling governmental interest; in fact, the OSV Ordinance was established to expel from the City those who cannot afford permanent residences in Pacifica and who sleep in vehicles as a result. Even if the City had a compelling interest—which it does not—the City failed to take efforts to precisely tailor its OSV Ordinance to serve such an interest, as would be required.

85.   The City's OSV Ordinance violates Plaintiffs' fundamental right to free movement for several reasons, including by targeting Plaintiffs and Class members and seeking to banish them from the City based on their lack of fixed housing and socioeconomic status. The OSV Ordinance impermissibly prevents Plaintiffs and Class members from peacefully dwelling in the city of their choosing. The OSV Ordinance also impermissibly favors Pacifica residents in fixed housing and discriminates against Plaintiffs and Class members by denying Plaintiffs and Class Members any options for RV parking permits. Furthermore, the OSV Ordinance flatly denies Plaintiffs their right to use City property designed for the purpose for which Plaintiffs seek to use it, namely, prohibiting Plaintiffs and Class members from parking their vehicles on public roads intended for parking. Expelling an entire population from the City is particularly egregious, and dangerous, in light of the ongoing COVID-19 pandemic which threatens the health and safety of this vulnerable population who are at risk of being displaced from the City and critical resources.

1

2

3

### THIRD CLAIM FOR RELIEF

**Substantive Due Process—Void for Vagueness (OSV Ban)**

**(Fourteenth Amendment of the U.S. Constitution)**

4      86.      Plaintiffs incorporate by reference all foregoing and subsequent allegations as

5  though fully set forth herein.

6      87.      The Substantive Due Process Clause of the Fourteenth Amendment to the U.S.

7  Constitution provides that no state shall "deprive any person of life, liberty, or property, without

8  due process of law." To satisfy the Substantive Due Process Clause, a municipal ordinance must

9  be sufficiently definite to provide adequate notice of conduct proscribed and provide sufficient

10  guidelines for the police so that arbitrary and discriminatory enforcement does not occur.

11  *Desertrain v. City of L.A.*, 754 F.3d 1147, 1155 (9th Cir. 2014).

12      88.      As written, under the OSV Ordinance, "[P]arking of any oversized vehicle in the

13  following manner shall be deemed unlawful at any time of the day or night and is prohibited."

14  The language in this ordinance fails to provide adequate notice of conduct proscribed.

15      89.      Furthermore, the City has failed to provide notice or guidelines for the police so

16  as to prevent arbitrary and discriminatory enforcement.

17      90.      Additionally, the City has provided inconsistent and confusing lists, maps,

18  signage, and instructions from law enforcement officers such that a reasonable person would not

19  be able to determine what constitutes a violation of the OSV Ban.

20      91.      The OSV Ordinance should therefore be declared unconstitutionally vague

21  facially in violation of Substantive Due Process protections under the Fourteenth Amendment to

22  the U.S. Constitution.

23

### FOURTH CLAIM FOR RELIEF

24

**Substantive Due Process—Void for Vagueness (Human Habitation Ban)**

25

**(Fourteenth Amendment of the U.S. Constitution)**

26      92.      Plaintiffs incorporate by reference all foregoing and subsequent allegations as

27  though fully set forth herein.

28

93.     As written, the Human Habitation Ban (Pacifica Municipal Code Title 4, Chapter 7, Article 11 § 4-7.1114) makes it unlawful for Plaintiffs or Class Members to engage in "human habitation" between the hours of 10 p.m. and 6 a.m. in a vehicle. Human habitation is broadly defined, and its definition does not clearly indicate the line between innocent and illegal activity.

94.     The Human Habitation Ordinance should therefore be declared unconstitutionally vague facially in violation of Substantive Due Process protections under the Fourteenth Amendment to the U.S. Constitution.

## FIFTH CLAIM FOR RELIEF

### Cruel and Unusual Punishment

### (Eighth Amendment of the U.S. Constitution)

95.     Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

96.     Under the Eighth Amendment, a government cannot impose criminal penalties on indigent persons for sitting, sleeping, or lying outside on public property so long as those persons do not have access to shelter. *Martin v.* City of *Boise*, 902 F.3d 1031, 1048 (9th Cir. 2018), amended by 920 F.3d 584 (9th Cir. 2019), cert. denied, 140 S. Ct. 674 (2019).

97.     The OSV Ordinance imposes criminal penalties on Plaintiffs and Class members for sleeping in the only shelter they have access to, their RVs parked on public roads in Pacifica.

98.     There are no shelters for the unhoused in the City. Plaintiffs and Class Members' only available shelter from the elements is to sleep or simply "be" is in their vehicles. Plaintiffs and Class Members must stop their vehicles to perform these basic human functions and have no options but to park on City streets, because the City has no "safe parking" lots or spaces where Plaintiffs or Class members can park without potentially being charged under the OSV Ban.

99.     Defendant City has rejected all attempts to establish "safe parking" lots, making it clear that it seeks to banish Plaintiffs and Class Members from the City by (1) issuing repeating parking citations so as to make it economically impossible for such persons to live in their RVs, and (2) threatening Plaintiffs with loss of liberty through imprisonment.

100.    Accordingly, the City's acts as alleged herein violate the Eighth Amendment's ban on cruel and unusual punishment.

### SIXTH CLAIM FOR RELIEF

**Excessive Fines and Fees**

**(Eighth and Fourteenth Amendment of the U.S. Constitution)**

101.    Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

102.    The 8th Amendment Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609–10 (1993). A fine is excessive if it is grossly disproportionate to the gravity of the offense, will deprive the offender of their livelihood or is more than their circumstances and estate will bear. *See Timbs v. Indiana*, 139 S. Ct. 682 (2019). Imposing unpayable fines on indigent defendants also violates due process and equal protections of the laws under the due process and equal protections provisions of Fourteenth Amendment, and the California Constitution. *Bearden v. Georgia*, 461 U.S. 660, 667–68 (1983); *People vs. Duenas*, 30 Cal. App. 5th 1157, 1168 (2019).

103.    The City, by the acts alleged herein, has violated the 8th Amendment Excessive Fines Clause by establishing a regime under which fines for a single continuous act—that of residing in an RV on city streets—gives rise to a series of rapidly cascading and ever-increasing fines and penalties. The punishments inflicted by the City on named Plaintiffs and Class members for violation of the OSV Ordinance are excessive fines. Plaintiffs and Class members who attempt to pay these fines must sacrifice paying for life-sustaining food, medication, or other necessities. And because they cannot afford the fines, they risk losing the only home available to them—their RV or vehicle—through towing and impoundment. With their RVs or vehicles taken from them, Plaintiffs and Class members would face the dangers of living on the streets without shelter and/or without the other necessities of life provided by their vehicles. Such a cruel punishment is grossly disproportionate to the gravity of the offense—which is

1  merely being human in Pacifica and being able to afford an RV or vehicle while being unable to
2  afford the escalating cost of permanent housing.

3      104.    As a result of enforcement of the RV Ordinance, the named Plaintiffs have
4  unfairly received tickets they cannot afford to pay and have suffered mental distress, humiliation,
5  and fear. Plaintiffs and Class members are therefore entitled to injunctive and declaratory relief,
6  restitution, and attorneys' fees and costs.

7  **SEVENTH CLAIM FOR RELIEF**

8  **Excessive Fines and Fees**

9  **(Article I, § 17 of the California Constitution)**

10      105.    Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as
11  though fully set forth herein.

12      106.    Under Article I, § 17 of the California Constitution, "Cruel or unusual punishment
13  may not be inflicted or excessive fines imposed."

14      107.    For the reasons set forth above with respect to the Eighth Amendment of the U.S.
15  Constitution, the OSV Ordinance also violates Plaintiffs' rights under Article I, § 17 of the
16  California Constitution.

17  **EIGHTH CLAIM FOR RELIEF**

18  **State-Created Danger**

19  **(Fourteenth Amendment of the U.S. Constitution)**

20      108.    Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as
21  though fully set forth herein.

22      109.    The OSV Ordinance gives the City the power to boot and/or tow individuals'
23  vehicles.

24      110.    For vehicularly housed individuals like Plaintiffs, towing their vehicles
25  constructively evicts them from their homes, as they are unable to pay the fees to secure the
26  release of their vehicles in the event of a tow. This deprives these individuals of their only shelter
27  and effectively forces them onto the street.

28

111.    The City is aware of the fact that there is a housing crisis in Pacifica and that towing vehicularly housed individual's homes will likely result in them living on the street.

112.    During the COVID-19 pandemic, the risks posed to individuals whose homes are towed are even greater. Individuals whose homes are towed are exposed to an increased risk of contracting the COVID-19 virus because they are unable to shelter-in-place in their homes.

113.    Even if these individuals are able to secure shelter elsewhere, for example in a shelter for the unhoused, their risk of contracting the virus is still heightened because they are in communal living quarters where they cannot social distance as effectively.

114.    Towing individuals' vehicles during the COVID-19 pandemic affirmatively places individuals in a state-created danger, in violation of the Fourteenth Amendment.

115.    Individuals whose vehicles are towed are placed at a serious risk of harm because they are deprived of their shelter and unable to shelter-in-place and social distance from others.

116.    The City is aware of the risks it exposes individuals to when it deprives them of their only shelter during a pandemic. The COVID-19 pandemic has gripped the nation for a year, and the risks posed by the virus have been well publicized by federal and local governments and the CDC. For large portions of the time the City has been enforcing the OSV Ban, the entire state of California has been under a mandatory, statewide shelter-in-place order.

117.    The City has acted with deliberate indifference to the danger in which it places Plaintiffs and has failed to take any steps, obvious or otherwise, to address these risks. The City has not taken COVID-19 into account in its enforcement of the OSV Ordinance and began enforcing the Ordinance at the height of the pandemic.

## NINTH CLAIM FOR RELIEF

### Unlawful Seizure of Property by Towing

### (Fourth Amendment of the U.S. Constitution)

118.    Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

119.     Under the Fourth Amendment to the U.S. Constitution, all persons are entitled to be free from unreasonable seizures of their property. The towing or impoundment of a vehicle constitutes a "seizure" under well-established Fourth Amendment jurisprudence.

120.     California Vehicle Code § 22650 acknowledges that "[a]ny removal of a vehicle is a seizure under the Fourth Amendment of the Constitution of the United States" and "shall be reasonable and subject to the limits set forth in Fourth Amendment jurisprudence."

121.     Mere violation of a city ordinance is not sufficient to justify impoundment of a vehicle under the Fourth Amendment or California Vehicle Code § 22650. In order for the towing or impoundment of a vehicle to be permissible, the person whose vehicle is towed must be provided with individualized notice unless the towing entity has a "strong justification" for not providing notice.

122.     The Ordinance which established the OSV Ban does not provide for individualized notice, stating only that towing may occur after a certain number of infractions.

123.     Defendant City does not provide individualized notice of towing to persons it claims are violating the OSV Ordinance and does not have the required "strong justification" for towing Plaintiffs' RVs without providing notice.

124.     No community caretaking need justifies towing the vehicles Defendant City claims are violating the OSV Ban.

125.     Accordingly, the acts of Defendant City, as alleged herein, violate the Fourth Amendment.

## TENTH CLAIM FOR RELIEF

### Unlawful Seizure of Property by Towing

### (Article I, § 13 of the California Constitution)

126.     Plaintiffs incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

127.     Under Article I, § 13 of the California Constitution, all persons have the right "to be secure in their persons, houses, papers and effects against unreasonable searches and seizures …"

128.     For the reasons set forth above with respect to the Fourth Amendment of the U.S. Constitution, the OSV Ordinance violates Plaintiffs' rights under Article I, § 13 of the California Constitution.

## ELEVENTH CLAIM FOR RELIEF

**Plaintiffs Geary, Miles, Bode and Sanders, and Members of the Subclass**

**Violation of Title II of the Americans with Disabilities Act**

**(42 U.S.C. §§ 12132, *et seq.*)**

129.     Plaintiffs Geary, Miles, Bode, and Sanders ("Plaintiffs with disabilities") incorporate by reference all foregoing and subsequent paragraphs as though fully set forth herein.

130.     Defendant City is a public entity within the meaning of Title II of the ADA. 42 U.S.C. § 12131.

131.     Plaintiffs Bode, Sanders, Miles and Geary and members of the Subclass are "qualified persons with disabilities" as defined in the ADA. 42 U.S.C. § 12102; 42 U.S.C. § 12131; 28 C.F.R. § 35.104.

132.     Title II of the Americans with Disabilities Act provides in pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

133.     This prohibition against discrimination in "services, programs, or activities" applies to "anything a public entity does." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (citation omitted); *see also Barden v. City of Sacramento*, 292 F.3d 1073, 1076-77 (9th Cir. 2002) (discussing rationale for broad construction).

134.     The City's parking program, including the enforcement by the Pacifica police department of its OSV Ordinance is a service, program, or activity of the City.

135.     Title II protects people with disabilities against facially neutral policies that burden people with disabilities more than non-disabled people, by requiring the public entity provide reasonable modifications to avoid the discrimination unless the public entity can

demonstrate such modifications would result in a fundamental alteration of the program. 28 C.F.R. § 35.130(b)(7); *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996).

136.    Reasonable modifications can adjust for the financial limitations that arise from a disability, not just the immediate manifestations of the impairment giving rise to the disability. *Giebeler v. M & B Associates*, 343 F. 3d 1143, 1152 (9th Cir. 2003).

137.    By refusing to reasonably modify its policies and practices as described herein to allow Plaintiffs Bode, Sanders, Miles, Geary, and members of the disability Subclass to legally park their vehicles on City streets or other public property and to utilize their vehicles for shelter, Defendant has violated and continues to violate the antidiscrimination requirements of Title II of the ADA. LASSMC and Plaintiffs have requested the City provide a process by which people with disabilities can seek exemption from enforcement of the OSV Ban on the basis of their disabilities, and/or access to "safe parking" sites where people with disabilities can park without violating the Ban. Defendants refused to provide any safe parking lots or otherwise permit or provide exceptions for persons with disabilities from enforcement of the OSV Ban.

138.    Title II regulations interpreting the ADA prohibit a public entity from utilizing criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination based on disability. 29 C.F.R. § 35.130(b)(3).

139.    A public entity is also prohibited from imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from fully and equally enjoying any service, program, or activity. 28 C.F.R. § 35.130(b)(8).

140.    Defendant's policies and practices in administrating their OSV parking program through ticketing Plaintiffs Geary, Miles, Bode, and Sanders and members of the Subclass, which threatens them with arrest and impoundment of their vehicles, and excluding unhoused RV owners from parking anywhere in Pacifica, has the effect of discriminating against and imposing disproportionate burdens on people with disabilities based on their disability, screening out such persons from the benefit of the City's parking program, and denying them meaningful access to such benefits and to the City's amenities enjoyed by and available to people without disabilities.

141.    In carrying out Defendant's policies and practices as described herein, Defendant has utilized criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination based on disability. 29 C.F.R. § 35.130(b)(3).

142.    In carrying out Defendant's policies and practices as herein described and denying Plaintiffs' request for reasonable modification in violation of Plaintiffs' rights under the ADA, Defendant has acted knowingly and with deliberate indifference to the harm substantially likely to occur. As a direct and proximate result of Defendant's acts and omissions, Plaintiffs have suffered and will continue to suffer injuries for which they have no adequate remedy at law.

143.    Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate.

144.    Pursuant to 42 U.S.C. § 12133, Plaintiffs with disabilities are entitled to declaratory and injunctive relief, and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

**TWELFTH CLAIM FOR RELIEF**

**Plaintiffs Geary, Miles, Bode and Sanders, and Members of the Subclass**

**Violation of Section 504 of the Rehabilitation Act of 1973**

**(29 U.S.C. § 749)**

145.    Plaintiffs Geary, Miles, Bode, and Sanders hereby incorporate each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

146.    Defendant City of Pacifica and the City's Police Department are recipients of financial assistance from the federal government.

147.    Section 504 of the Rehabilitation Act of 1973 requires qualified persons with disabilities be provided with meaningful access to federally funded programs. In order to assure meaningful access, reasonable modifications may be required unless the recipient of federal funding can demonstrate such modifications would result in a fundamental alteration in the nature of the program. 29 U.S.C. § 749; 24 C.F.R. §§ 8.3 and 8.4; *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

148.    Defendant's actions and omissions as herein stated have denied the rights of Plaintiffs with disabilities and Disability Subclass members to reasonable modifications, thereby denying them meaningful access to Defendant's parking program and to the amenities the City offers its residents without disabilities, and subjecting them to discrimination on the basis of disability, in violation of section 504 of the Rehabilitation Act. As a result of Defendant's unlawful acts in violation of the Rehabilitation Act, named Plaintiffs have suffered and continue to suffer injuries. Named Plaintiffs with disabilities and Disability Subclass members are entitled to injunctive and declaratory relief, restitution, and attorneys' fees and costs.

<u>**THIRTEENTH CLAIM FOR RELIEF**</u>

**Plaintiffs Geary, Miles, Bode, and Sanders and Members of the Subclass**

**Violation of the California Disabled Persons Act**

**(California Civil Code §§ 54–54.3)**

149.    Plaintiffs Geary, Miles, Bode, and Sanders incorporate by reference all foregoing and subsequent allegations as though fully set forth herein.

150.    The California Disabled Persons Act ("CDPA") incorporates the Americans with Disabilities Act, and states "a violation of the right of an individual under the Americans with Disabilities Act…constitutes a violation of" the CDPA. Cal. Civ. Code § 54.1(d).

151.    Thus, by violating the ADA as alleged in Plaintiffs' First Cause of Action, above, the City of Pacifica is also violating the CDPA.

152.    Plaintiffs are aggrieved and potentially aggrieved by Defendant's acts and omissions, as alleged herein. Moreover, as a direct and proximate result of those acts and omissions, Plaintiffs have suffered and will continue to suffer injuries for which they have no adequate remedy at law.

153.    Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate.

154.    Under the CDPA, Plaintiffs with disabilities are entitled to damages including the greater of actual or statutory damages. Cal. Civ. Code § 54.3(a).

155.     Plaintiffs with disabilities are also entitled to an award of attorneys' fees, costs, and expenses. *Id.*

### FOURTEENTH CLAIM FOR RELIEF

**Plaintiffs Geary, Miles, Bode, and Sanders and Members of the Subclass**

**Discriminatory Program**

**(Cal. Gov't Code §11135)**

156.     Each and every allegation throughout this entire complaint is incorporated as though repeated and fully set forth herein.

157.     California Government Code section 11135 sets forth a nondiscrimination policy for state programs. It provides that in pertinent part:

> [n]o person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, genetic information or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state.

Cal. Gov't Code § 11135(a).

158.     Defendant City of Pacifica and the City's Police Department are recipients of financial assistance from the State of California.

159.     It is a discriminatory practice for a recipient of state financial assistance, in carrying out any program or activity, on the basis of disability, (a) to deny a person the opportunity to participate in, or benefit from an aid, benefit or service; (b) to afford a person the opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded others; (c) to provide a person with an aid, benefit or service that is not as effective in affording an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others…(g) to otherwise limit a person in the enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving any aid,

benefit or service resulting from the program or activity." 22 Cal. Code Regs. § 98101 (a)-(c), (g).

160.    It is also discrimination for a recipient of state financial assistance to utilize criteria or methods of administration that: "(1) have the purpose or effect of subjecting a person to discrimination on the basis of disability; [or] (2) have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the recipient's program with respect to a person with a disability…" 22 Cal. Code Regs. § 98101(i).

161.    Defendant City was, at all times relevant to this action, and is currently operating or administering a program or activity that receives state financial assistance, within the meaning of Section 11135.

162.    Defendant City has violated the rights of Plaintiffs with disabilities secured by Cal. Gov't Code § 11135 et seq.

163.    Because Defendant's discriminatory and wrongful conduct is ongoing, declaratory and injunctive relief are appropriate remedies. Further, as a direct result of Defendant's actions, Plaintiffs with disabilities are suffering irreparable harm and therefore speedy and immediate relief is appropriate.

164.    Plaintiffs with disabilities are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs incurred in bringing this action.

## **PRAYER FOR RELIEF**

Based on the foregoing, Plaintiffs respectfully request the following relief:

1.    Declare Pacifica Ordinance No. 855-C.S., and its resulting OSV Ban (including Pacifica Municipal Code Section 4-7.1204 and 4-7.1205), violate the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution; Article I, §§ 7(a), 13, and 24 of the California Constitution; Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 749; the California Disabled Persons Act, California Civil Code §§ 54-54.3; and California Government Code section 11135.

2.     Declare the Pacifica Municipal Code Section 4-7.1114, the Human Habitation Ban, is void for vagueness and unenforceable under the Fourteenth Amendment of the U.S. Constitution;

3.     Certify the proposed Class and Disability Subclass as indicated above, and appoint the named Plaintiffs as class representatives and the undersigned counsel as class counsel;

4.     Issue a preliminary and permanent injunction declaring the OSV Ordinance unenforceable and directing Defendant City to cease all efforts to enforce or collect prior citations issued under the OSV Ban;

5.     Issue a preliminary and a permanent injunction declaring the Human Habitation Ban invalid and unenforceable and directing the Defendant City to cease all efforts to enforce the Human Habitation Ban;

6.     In the alternative, issue an order requiring the City to create a process for people with disabilities to seek exemption from enforcement of the OSV Ordinance on the basis of their disabilities, and/or to provide access to safe parking sites;

7.     Award restitution for fines and penalties that Defendant City has collected from named Plaintiffs and Class members pursuant to the OSV Ban and Human Habitation Ban;

8.     Award Plaintiffs reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, 29 U.S.C. § 794a(a)(2)(b), Cal. Civ. Code § 52, and Cal. Civ. Proc. Code § 1021.5;

9.     Award to Plaintiffs costs and expenses incurred in the filing and prosecution of this action, as authorized by 42 U.S.C. § 12188 and California Civil Code section 54.3;

10.     Order such other and further relief that the Court deems just and proper.

Date: March 15, 2021

*/s/ Grayce Zelphin*
Grayce Zelphin
Brandon Greene
William S. Freeman

CLASS ACTION COMPLAINT

43

1

2

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA

3

4

Shirley Gibson
Ashley Luo
LEGAL AID OF SAN MATEO COUNTY

Thomas Zito
Sean Betouliere
Shira Tevah
DISABILITY RIGHTS ADVOCATES

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28